EDUARDO TORRES TRUMBULL, ETC., demandantes y recurridos, *v.* RAFAEL PESQUERA y RAFAEL ÁLVAREZ, demandados y recurrentes.

*Números:* R-68-148, R-68-159        *Resueltos:* 20 de mayo de 1969

340

*José R. Pesquera,* abogado de Rafael Pesquera; *Martínez-Muñoz, Agraít-Oliveras & Otero,* abogados de Rafael Álvarez; *Roberto J. Matos* y *Luis Fernández Ramírez,* abogados de los recurridos.

Sala Primera integrado por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

El Juez Asociado Señor Ramírez Bages emitió la opinión del Tribunal.

Responsabilizados los demandados-recurrentes Pesquera y Álvarez en un 25% y un 40% respectivamente por las graves y dolorosas quemaduras sufridas por un niño de 11 años mientras trataba de pegar un parche a un neumático de su bicicleta utilizando para ello gasolina y el parche que le vendió un empleado del garage de Pesquera y un pañito y una caja de fósforos que le entregó un empleado del garage de Álvarez el cual, al informarle al menor que no podía hacerle la reparación solicitada le explicó como llevarla a cabo, concluimos que Pesquera no contribuyó en forma alguna a la ocurrencia del accidente en cuestión y que Álvarez es responsable en un 65% de los daños sufridos por los recurridos.

En las conclusiones de hecho del tribunal de instancia se relacionan como probados los siguientes hechos en este caso:

El día 19 de octubre de 1962 el menor Raúl Iván Torres Ramírez, entonces de 9 años de edad, le pidió dinero a su madre para comprar un parche y gasolina para arreglar un tubo de su bicicleta. La señora Ivelisse Ramírez, madre

del menor, le entregó veinticinco centavos y éste se dirigió hacia el garage Pesquera, luego de haber tomado, con el permiso de su mamá, un pote de cristal de los que se utilizan para envasar leche. Por el camino se le unió un niño de nombre Eguí. Al llegar al garage Pesquera le pidió a uno de los empleados de ese garage que le pegara el parche al tubo y éste le contestó que le podía vender el parche y la gasolina, pero no podía pegarle el parche porque la máquina de vulcanizar estaba rota. Luego de comprar el parche y la gasolina, la cual envasó en el pote de cristal que con ese propósito llevaba, el menor Raúl Iván y su amigo Eguí se fueron hasta el garage Álvarez. Allí el menor Raúl Iván le pidió a un señor de los que trabajaba en ese garage que le pegara el parche al tubo de la bicicleta y éste le contestó que no podía porque estaba ocupado, pero le explicó cómo hacerlo y le prestó un pañito y una caja de fósforos.

El menor Raúl Iván se puso a limpiar el tubo con el pañito impregnado en gasolina y entonces su amigo Eguí prendió uno de los fósforos y lo tiró sobre un charquito de gasolina que se había hecho en el sitio. Ocurrió una explosión y cuando el menor demandante se quiso retirar del sitio, resbaló y cayó encima del fuego recibiendo extensas y graves quemaduras en la cara y en los brazos, piernas y en el abdomen que requirieron varias intervenciones quirúrgicas y extenso, prolongado y doloroso tratamiento.

Del récord aparece que el niño demostró tener una inteligencia adelantada a sus años. Testificó que nunca antes había comprado gasolina. Admitió que conocía los peligros que entrañaba ese producto y sabía que era inflamable.

Con motivo de estos hechos, el Señor Eduardo Torres Trumbull, por sí y como representante de la Sociedad de Gananciales, y como padre con patria potestad sobre su menor hijo Raúl Iván, radicó demanda ante el Tribunal Superior, Sala de Bayamón, contra Rafael Pesquera, como dueño del garage Pesquera y contra Rafael Álvarez como

dueño del garage Álvarez. Visto el caso en su fondo, el tribunal sentenciador declaró con lugar la demanda haciendo solidariamente responsables a los demandados en 65% de la negligencia. Repartió esa negligencia a base de 25% por parte de Rafael Pesquera y 40% por parte de Rafael Álvarez, con fines de evitar múltiple litigación. Determinó, además, que el menor fue negligente en un 15% y su madre en 20%. Los demandados fueron sentenciados a pagar solidariamente, en concepto de indemnización la suma de $13,000 al menor Raúl Iván y $3,900 a la Sociedad de Gananciales. Esta suma ya tiene descontado el grado de negligencia atribuible a los demandantes.

No conforme con el anterior pronunciamiento apunta el recurrente Rafael Pesquera que el tribunal de instancia incidió (1) "al determinar que la causa próxima del accidente se debió a la negligencia del codemandado Rafael Pesquera y sus agentes." El recurrente Rafael Álvarez, a su vez, apunta que el tribunal de instancia incidió al concluir que (2) un empleado del recurrente facilitó una caja de fósforos al demandante o que al así actuar lo hiciera dentro del curso de sus funciones como tal y (3) el recurrente fue negligente o responsable del accidente.

1. Consideraremos primeramente el apuntamiento hecho por el recurrente Rafael Pesquera.

En su argumentación aduce el recurrente que el único acto negligente que se le imputa es que un empleado suyo vendió la gasolina y un parche al menor demandante y que este acto fue negligente dentro de la cadena de sucesos que constituyó la causa próxima del accidente; que la prueba de la parte demandante demostró (a) que fue la madre del menor quien le dio dinero, su consentimiento y una vasija, para que el menor comprara la gasolina; (b) que la prueba no demostró que fuera su empleado el que vendió la gasolina; (c) que fue en otro garage en el que ocurrieron los hechos; (d) que la prueba estableció una fuerza interven-

tora imprevisible; y (e) que el menor tenía conocimiento del peligro envuelto. Invocar nuestros casos de *Vargas Rodríguez* v. *Fuentes Fluviales*, 86 D.P.R. 104 (1962), y *López Reyes* v. *Emmanuelli*, 90 D.P.R. 689 (1964).

La prueba demuestra que la madre del menor le dio 25¢ y el permiso para que tomara el envase de cristal y comprara la gasolina y el parche que necesitaba para arreglar un neumático de su bicicleta. Por tal motivo fue que el tribunal de instancia le impuso a la madre del menor "una parte (20%) de la negligencia combinada concurrente productora del accidente."

La prueba demostró que un empleado de Pesquera vendió la gasolina y el parche a Raúl Iván. A los efectos de comprobar esto, nos tenemos que atener a la prueba presentada por los recurridos ya que los recurrentes sometieron el caso sin presentar prueba.

La declaración del menor Raúl Iván, en cuanto al hecho de que en el garage Pesquera fue atendido por uno de los que trabajaban en el garage y que éste le vendió la gasolina y el parche pero que no le pudo arreglar el tubo de la bicicleta porque la máquina de vulcanizar estaba rota, no fue rebatida en forma alguna por la parte demandada, ni su testimonio pudo ser desvirtuado en el intenso contrainterrogatorio a que fue sometido.

■ Para que exista negligencia, los daños resultantes de determinada actuación deben ser algo que un hombre razonable pueda preveer. *Colón* v. *Shell Co.*, 55 D.P.R. 592 (1939), y que tales daños sean la consecuencia probable del acto negligente, *Rivera* v. *Pueblo*, 76 D.P.R. 404 (1954).

■ En derecho, una persona no es responsabilizada de todas las posibles consecuencias de su actuación negligente, *Rivera* v. *Pueblo*, supra. Tal persona no es responsable por una causa remota. Un daño parece ser el resultado natural y probable de un acto negligente si después del suceso, y

mirándolo retroactivamente el acto que se alega ser negligente, tal daño aparece como la consecuencia razonable y ordinaria del acto. *Greiving* v. *La Plante*, 131 P.2d 898, 901 (Kan. 1942). Debe, además, existir una secuencia natural y continua, no interrumpida por ninguna causa nueva e independiente.

En *Clark* v. *Ticehurst*, 271 P.2d 295 (Kan. 1954), se impuso responsabilidad al dueño de una estación de venta de gasolina por las quemaduras sufridas por un menor con motivo de la venta de 10¢ de gasolina por un empleado de dicha estación a otro menor llamado Darwin, de 11 años, quien le informó al empleado que iba a ayudar a hacer arder la gasolina en una casa cercada; que este menor llevó la lata con la gasolina a la parte de atrás del hogar del menor lesionado donde jugaban varios niños; que Darwin echó parte de la gasolina sobre un aeroplano plástico de juguete el cual se incendió, incendiando al mismo tiempo el resto de la gasolina en la lata la cual Darwin instintivamente lanzó lejos de sí, hacia el menor lesionado cuyo cuerpo quedó cubierto de gasolina ardiendo lo que le causó quemaduras muy severas. Sostuvo el tribunal en este caso, confirmado al de instancia, que el caso de *Greiving*, supra, no era decisivo en cuanto a éste; que "cuando el vendedor vendió la gasolina al niño lo hizo a sabiendas de que éste iba a hacer arder la gasolina y debió saber que, al hacer eso, el resultado probable era que algún daño se ocasionaría y el hecho que el daño se ocasionó a un niño distinto del que hizo la compra no favorece al apelante"; que el hecho de que se hizo arder la gasolina luego de transportarse fuera de la estación no era un acto interventor que rompía el curso de la causalidad pues el vendedor tenía aviso del uso que se iba a dar a la gasolina.

En *Díaz Colón* v. *Autoridad de Tierras*, 96 D.P.R. 42 (1968), y en *Vargas Rodríguez* v. *Fuentes Fluviales*, supra, negamos la responsabilidad de la demandada-recurrente por la muerte de niños ahogados en uno de sus canales de riego.

En *López Reyes* v. *Emmanuelli*, supra, también negamos la responsabilidad del dueño de un edificio por la muerte de un niño al caerse del muro de la azotea de la estructura al cual había brincado. Aunque en todos estos casos se dijo que "desde su más tierna edad los niños conocen el peligro que representa el agua, el fuego y la altura", el dictamen negando la responsabilidad de los constructores de los canales de riego o del dueño del edificio se basó en la no aplicación de la doctrina de peligro atrayente y en que éstos no habían sido negligentes. Dichos casos, por lo tanto, son distinguibles del que nos ocupa.

■ A nuestro juicio, aunque la gasolina fue vendida por el empleado de Pesquera la transacción no se realizó a sabiendas o anticipando que el propio niño fuese a pegar el parche. La realidad fue que el niño no fue alentado o instruido para que lo hiciese y que la mera venta de la gasolina y el parche no lo indujo a tratar de pegarlo por sí solo sino que tuvo por resultado el que llevase esos materiales al garage Álvarez a solicitar que allí le hiciesen el trabajo. Se dispuso a hacerlo por su cuenta cuando el empleado de este último garage le dijo que no podría por estar ocupado pero le explicó cómo hacerlo y le dio un pañito y los fósforos. El acto de vender la gasolina y el parche no fue un acto negligente. Tampoco constituyó una causa legal de las lesiones sufridas por el menor en cuestión. *Pabón Escabí* v. *Axtmayer*, 90 D.P.R. 20, 25, 27–30 (1964).

2–3. Arguye el recurrente Rafael Álvarez que la evidencia presentada no sirve de apoyo a la conclusión del tribunal sentenciador a los efectos de que el recurrente fue negligente o responsable del accidente y que, además, cometió error el tribunal sentenciador al concluir que fue un empleado suyo quien facilitó una caja de fósforos al demandante, y que al así actuar lo hiciera dentro del curso de sus funciones como tal.

■ El demandado-recurrente, al igual que el codemandado Pesquera, no presentó prueba en apoyo de su tesis. La prueba presentada por la parte demandante a los efectos de que en el garage Álvarez el menor le pidió a uno de los que trabajaban allí "que si él me podía pegar el parcho en el tubo y me dijo que no porque estaba ocupado" pero que le explicó cómo hacerlo y le prestó un pañito para que el menor limpiara el tubo con la gasolina y le prestó una caja de fósforos, además de explicarle cómo manejar la máquina de vulcanizar, no fue rebatida en forma alguna por la parte demandada. Además, tampoco se desvirtuó su testimonio en el contrainterrogatorio. Las declaraciones juradas de Claudio Ortega Muñoz y Carmen Álvarez de Santiago no desvirtuaron en nada ese testimonio sino que por el contrario tienden a corroborar la presencia del menor y su amigo en el garage Álvarez, y la ocurrencia del accidente. Nos parece evidente que al así actuar el empleado de Rafael Álvarez lo hizo en funciones de su empleo. Tocaba al recurrente rebatir esa presunción como se hizo en *Oyola* v. *Sucn. Collazo*, 91 D.P.R. 778 (1965). Optó por no presentar prueba. Las conclusiones del juez sentenciador están sostenidas por la prueba y no basadas en especulaciones.

■ Concluimos que al instruir el empleado del garage Álvarez al menor sobre la forma de pegar el parche utilizando gasolina y fósforos, era previsible que pudiese surgir el accidente con motivo del cual el niño resultase lesionado como en efecto lo fue. No hay duda de que al inducirlo a utilizar la gasolina y los fósforos fue la causa legal de las lesiones que sufrió y que el acto del otro niño no fue una causa interventora que exime al recurrido Álvarez de responsabilidad sino que tal actuación era previsible. *Clark* v. *Ticehurst*, supra.

■ Una persona no queda relevada de responsabilidad por una causa interventora que razonablemente pudo ser

prevista, ni por una que sea un incidente normal del riesgo creado. Prosser *On Torts*, 2d. ed., pág. 266. Dijimos en *Ginés Meléndez* v. *Autoridad de Acueductos*, 86 D.P.R. 518, 523 (1962), que "el mero hecho de que haya un acto de un tercero interventor no convierte la actuación del actor en una causa remota, si éste pudo o debió haber previsto esta intervención."

En *Moore* v. *St. Louis Southwestern Railway Company*, 301 S.W.2d 395 (Mo. 1957), se expresó la ley así:

". . . La regla general es que si el demandado es negligente y su negligencia se combina con la de otro o con cualquiera otra causa interventora independiente, él es responsable, aunque su negligencia no sea la única negligencia o única causa próxima y aunque su negligencia no produjera el daño a no ser por la causa interventora independiente [citas]. Y la regla es además que si el acto o la omisión inicial es uno cuyas consecuencias naturales, probables y previsibles son la inflicción de un daño, entonces el que ejecutó el acto o incurrió en la negligencia original es responsable, a pesar de que otras causas, condiciones o agencias intervinieron entre su negligencia y el resultado final . . . ."

■ Como se dice en *Ginés Meléndez*, supra, un demandado es responsable si su negligencia es una causa próxima del daño aunque no sea la única causa próxima de tal daño.

Aduce el recurrente que el conocimiento del menor del peligro envuelto, lo releva de responsabilidad.

■ Hemos dicho que a un niño de pocos años no se le requiere que cumpla con las normas de conducta que es razonable esperar de un adulto pero su conducta debe juzgarse por la norma de conducta que puede esperarse de un niño de similar edad, inteligencia y experiencia. *Hernández* v. *Acosta*, 64 D.P.R. 171 (1944); que "el deber de vigilar por la seguridad de un niño transgresor termina donde empieza la capacidad del niño para comprender y evitar el peligro." *Díaz* v. *Central Lafayette*, 66 D.P.R. 827 (1947). A base de esos criterios veníamos aplicando en nuestra jurisdicción la

doctrina de negligencia contributoria que le impedía al demandante que a su vez hubiese sido negligente, recuperar por sus daños. La Ley Núm. 28 de 9 de junio de 1956 enmendó el Art. 1802 del Código Civil—31 L.P.R.A. sec. 5141 —cuna de la responsabilidad civil por negligencia, a los efectos de que "La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización." Esta enmienda, a todas luces, tuvo el propósito de rechazar la doctrina que habíamos venido utilizando anteriormente.

■ Después de 1956, a nuestro juicio, lo que tenemos que determinar en un caso donde se alega el conocimiento del menor, es si en efecto ese menor tenía conocimiento de los riesgos o del peligro envuelto de manera que se le pudiera imputar negligencia en su actuación. Dicha actuación negligente, de ninguna forma relevaría al demandado de su responsabilidad si él a su vez fue negligente, sino que sería un índice para aplicar los grados de negligencia correspondiente a cada uno.

■ Al determinar si el menor tenía conocimiento del peligro o apreció debidamente el riesgo envuelto, los tribunales deben de tomar en consideración y reconocer lo que es de conocimiento general, es decir, que la conducta irreflexiva, acciones impulsivas y el juicio inmaduro son propios de la juventud y que a pesar de que un niño (o niña) puede tener el conocimiento de un adulto respecto al peligro de determinada actuación, no tiene la prudencia, atención y discreción de un hombre ordinariamente prudente para evitarlo. *Hosford* v. *Clark*, 359 S.W.2d 424 (Mo. 1962).

En el caso que nos ocupa el juez encontró que el niño fue negligente en un 15%. A la luz de las circunstancias previamente relacionadas no creemos que incidió al así concluir.

En vista de lo expuesto, procede modificar la sentencia dictada en este caso en los siguientes extremos:

(1) Se revocará en cuanto impone responsabilidad al recurrente Rafael Pesquera y en tal virtud se desestima la demanda en su contra, y

(2) Considerando que el tribunal de instancia atribuyó solidariamente a los recurrentes un 65% de la negligencia que ocasionó el accidente en este caso y que la distribución entre Pesquera y Álvarez en nada puede afectar a los recurridos, determinamos que este último debe responder en un 65% de los daños causados a los recurridos.

*Así modificada debe confirmarse la referida sentencia.*