*950 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos Jesús M. Gregirene Hernández representado por sus padres, Jesús M. Gregirene Delgado y Sonia E. Hernández Encamación, quienes también comparecen por sí (en adelante los apelantes), y nos solicitan la revisión de la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, el 24 de abril de 2002, notificada y archivada en autos el 26 de abril de 2002. Mediante la misma, el tribunal de instancia desestimó la demanda en daños y perjuicios presentada por los apelantes en contra de Supermercados Amigo Inc., Executive Security Inc., American Insurance Co., Juan Rodríguez y la Sociedad Legal de Gananciales compuesta con su esposa Fulana de Tal (en adelante los apelados).
Luego de estudiado el expediente ante nuestra consideración, revocamos la sentencia apelada.
I
Los hechos que dan inicio a la presente controversia son los siguientes. Según las alegaciones de la demanda, el 27 de enero de 2000, mientras el menor aquí apelante, Jesús M. Gregirene Hernández, se encontraba en las facilidades del Supermercado Amigo ubicado en Río Grande Estates, se le acercó el guardia de seguridad Juan Rodríguez y le requirió que sacara sus pertenencias del bolsillo, lo cual hizo no apareciendo en el contenido de los mismos ningún objeto que no fuera de la propiedad del menor. Alegan los apelantes que dicho evento ocurrió *951 frente a varias personas que hacían sus compras en dicho establecimiento, lo que hizo que el menor se sintiera humillado causándole ello sufrimientos morales y angustias mentales.
Por ello, el 5 de mayo de 2000, los apelantes presentaron demanda en daños y perjuicios en contra de las partes apeladas y alegaron que la intervención del guardia de seguridad con el menor constituyó una detención ilegal y solicitaron el resarcimiento económico por los daños que les causó la actuación del guardia de seguridad de la que alegó también eran responsables el resto de los apelados.
El 10 de agosto de 2000, el Supermercado Amigo, a través de su representante legal, presentó la contestación a la demanda, como así lo hizo la aseguradora Puerto Rico American Insurance Co. (PRAICO) el 23 de octubre de 2000 y Executive Security Inc. el 7 de mayo de 2001.
El 22 de octubre de 2001, Supermercados Amigo presentó demanda contra coparte y alegó que de surgir en su día que las alegaciones de la demanda eran ciertas, la responsable sería Executive Security Inc., por ser el patrono del guardia de seguridad involucrado en los hechos.
El 31 de octubre de 2001, la parte apelante envió por separado un requerimiento de admisiones a Executive Security Inc, y a Supermercados Amigo Inc. (Ap.VTI, págs. 14 a 17 y Ap. VIII, págs. 18 a 22).
Pasado el término de 20 días que provee la Regla 33 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 33, para que los requeridos sometieran la contestación al requerimiento de admisiones, la parte apelante presentó una moción ante el tribunal de instancia en la que solicitó se dieran por admitidos dichos requerimientos enviados a las apeladas Executive Security Inc. y Supermercados Amigo.
El 23 de enero de 2002, la apelada Executive Security Inc. presentó la contestación a demanda contra coparte presentada por Supermercados Amigo.
El 30 de enero de 2002, notificada el 3 de febrero de 2002, el tribunal de instancia emitió una orden en la cual declaró con lugar la moción solicitando se dieran por admitidos los requerimientos de admisiones cursados a Executive Security y a Supermercados Amigo.
Luego del trámite procesal pertinente, la vista en su fondo se celebró el 15 de febrero de 2002.
El 24 de abril de 2002, el tribunal de instancia emitió sentencia desestimando la demanda y ordenando el archivo con perjuicio de la causa de acción en daños y perjuicios presentada por la parte apelante. Señaló en su sentencia que de la prueba desfilada ante sí no pudo establecer que al menor Jesús Gregirene se le privara de su libertad ni que éste sufriera daño alguno por el incidente. Por lo tanto, determinó que como la parte apelante no pudo establecer con preponderancia de prueba la existencia de un daño real ni el nexo causal con algún acto u omisión de la parte apelada, según exige el Artículo 1802 de Procedimiento Civil, procedía desestimar la demanda en todas sus partes.
La parte apelante, inconforme con tal determinación, acude ante nos mediante recurso de apelación y nos señala la comisión de los siguientes errores por parte del Tribunal de Primera Instancia:

“Erró el Tribunal de Primera Instancia al declarar sin lugar la demanda a pesar de la evidencia presentada que demostró la conducta negligente y los daños ocasionados a la parte demandante.

Erró el Tribunal de Primera Instancia al descartar las admisiones de la parte demandada Executive Security Services, Inc., mediante la cual se establecieron todos los elementos de una causa de acción por detención ilegal.

*952
Erró el Tribunal de Primera Instancia al concluir que la parte demandante no descargó el peso de la prueba.

Erró el Tribunal de Primera Instancia en la apreciación de la prueba desfilada y actuar con prejuicio, pasión y parcialidad. ”

Esbozados los hechos aplicables al presente caso, procedemos a exponer el derecho aplicable.
II
A. El Requerimiento de Admisiones
El requerimiento de admisiones es un mecanismo procesal plasmado en la Regla 33 de Procedimiento Civil, 32 L.P.R.A. Ap. m. Dicho mecanismo persigue el propósito de aligerar los procedimientos, definiendo y limitando las controversias del caso, proporcionando así un cuadro más claro sobre las mismas. Mediante esta regla procesal, aunque no es propiamente un mecanismo de descubrimiento de prueba, se pueden lograr “admisiones que pueden usualmente evadirse al contestar las alegaciones o interrogatorios o las preguntas formuladas en el curso de una deposición”. Audiovisual Language v. Sistema de Estacionamiento Natal Hermanos, 144 D.P.R. 563 (1997); Pérez Cruz v. Fernández, 101 D.P.R. 365 (1973).
Esta regla es un mecanismo sencillo y económico, de excepcional utilidad en la práctica contenciosa. Al amparo de la misma, se puede requerir que se admita la veracidad de cualquier materia que esté dentro del alcance de la Regla 23.1 de Procedimiento Civil, que se relacionen con cuestiones de hechos o con la aplicación de la ley a los hechos y la autenticidad de cualquier documento que se acompañe con el requerimiento. José Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo I, Publicaciones JTS, 2000, pág. 565.
En lo pertinente, la citada regla dispone lo siguiente:

“Regla 33. Requerimiento de Admisiones

(a) Requerimiento de admisión. A los efectos de la acción pendiente únicamente, una parte podrá requerir por escrito a cualquier otra parte que admita la veracidad de cualesquiera materias dentro del alcance de la Regla 23.1 contenidas en el requerimiento que se relacionen con cuestiones de hechos u opiniones de hechos o con la aplicación de la ley a los hechos, incluyendo la autenticidad de cualquier documento descrito en el requerimiento..

Cada materia sobre la cual se requiera una admisión deberá formularse por separado. Todas las cuestiones sobre las cuales se solicite una admisión se tendrán por admitidas, a menos que dentro de los veinte (20) días de haberle sido notificado el requerimiento o dentro del término que el tribunal concediése mediante moción y notificación, la parte a quien se le notifique el requerimiento le notifica a la parte que requiere la admisión, una contestación suscrita bajo juramento por la parte o una objeción escrita sobre la materia. A menos que el tribunal acorte el término, un demandado no estará obligado a notificar contestaciones u objeciones antes de transcurridos veinte (20) días a partir de haberle sido entregada copia de la demanda y el emplazamiento, debiéndose en este caso apercibirle en el requerimiento que de no contestarlo en el término dispuesto se entenderá admitido...
(b) Efecto de la admisión. Cualquier admisión hecha de conformidad con esta regla se considerará definitiva, a menos que el tribunal, previa moción al efecto, permita el retiro o enmienda de la misma....”. (Enfasis Nuestro).
Una lectura de la regla antes citada nos permite advertir que si la parte a la cual se le presenta un requerimiento de admisiones no cumple con el término dispuesto en la misma para presentar una contestación u *953 objeción, las cuestiones sobre las cuales se solicitó la admisión, automáticamente se tendrán por admitidas. Esta admisión se considerará definitiva, a menos que el tribunal, previa moción al efecto, permita su retiro o una enmienda a la misma. En el ejercicio de su discreción, el tribunal debe interpretar la regla de forma flexible, favoreciendo en los casos apropiados, que el conflicto se dilucide en los méritos. Debe ejercer especial cuidado cuando se trata de una admisión tácita, o sea, por no haberse contestado el requerimiento en el término establecido para ello. Audiovisual Language v. Sistema de Estacionamiento Natal Hermanos, supra. La regla contiene los criterios que el tribunal tiene que utilizar al ejercer su facultad discrecional para permitirle a una parte retirar o modificar una admisión. Ahora bien, las disposiciones de la regla son mandatorias, no meramente directivas, lo que requiere que haya un cumplimiento sustancial con las mismas. Al igual que ocurre con cualquier otra regla procesal, al aplicarla e interpretarla, no se puede permitir que consideraciones técnicas prevalezcan en detrimento de la justicia sustancial. Las Reglas de Procedimiento Civil “se interpretarán de modo que garanticen una solución justa, rápida y económica de todo procedimiento”. Regla 1 de Procedimiento Civil, 32 L.P.R.A Ap. II, R.l; Audiovisual Language v. Sistema de Estacionamiento Natal Hermanos, supra.
B. Los Daños y Perjuicios
El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. Artículo 1802, 31 L.P.R.A § 5141; Valle Izquierdo v. E.L.A., Opinión de 14 de mayo de 2002, 2002 J.T.S. 70. Daño es todo aquel menoscabo material o moral que sufre una persona, ya en sus bienes vitales naturales, ya en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra. García Pagán v. Shiley Caribbean, Etc., 122 D.P.R. 193 (1988). La culpa consiste en la omisión de la diligencia exigible, la que si se hubiera empleado podría haber evitado el resultado dañoso. Toro Aponte v. E.L.A., 142 D.P.R. 464 (1997). Se ha expresado que el concepto culpa reconocido en el Artículo 1802, supra, incluye cualquier falta de una persona que produce un mal o daño. Valle Izquierdo v. E.L.A., supra; Leyva v. Aristud, 132 D.P.R. 489 (1993).
De conformidad con la referida disposición estatutaria, la reparación de un daño causado procede, siempre y cuando se demuestren varios elementos indispensables, sin los cuales no se configura causa de acción alguna que pueda ser reconocida bajo la doctrina de la responsabilidad civil extracontractual. Es norma harto conocida que el demandante, en una causa de acción por daños y perjuicios extracontractuales, tiene que probar: a) la existencia de una acción u omisión productora del acto ilícito extracontractual; b) la antijuricidad de la misma; c) culpa o negligencia del agente; d) producción de un daño; y e) relación de causa y efecto entre la acción u omisión y el daño.

Valle Izquierdo v. E.L.A., supra.

Para que exista responsabilidad civil a tenor con el Artículo 1802 del Código Civil, supra, es necesario que concurran los siguientes elementos: (1) un daño, (2) una acción u omisión negligente, y (3) la correspondiente relación causal entre el daño y la conducta culposa o negligente. Toro Aponte v. E.L.A., supra; Ramírez v. E.L.A., 140 D.P.R. 385 (1996); Monllor v. Soc. de Gananciales, 138 D.P.R. 600 (1995).
Por otra parte, los elementos que han de considerarse en la determinación de si una omisión genera responsabilidad son: (1) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño, el incumplimiento del cual constituye la antijuricidad, y (2) si de haberse realizado el acto omitido, se hubiera evitado el daño. Tormos Arroyo v. D.I.P., 140 D.P.R. 265 (1996); Soc. Gananciales v. G. Padín Co., Inc., 117 D.P.R. 94 (1986). Es precisamente del inciso número dos que surge el deber de previsibilidad que da lugar a la responsabilidad bajo el Artículo 1802 del Código Civil, supra. Sin embargo, esto no quiere decir que la persona está obligada a prever todos los posibles riegos que puedan concebirse en una determinada situación. Si así fuera, se convertiría prácticamente en una responsabilidad absoluta. Pacheco v. A.F.F., 112 DPR 296 (1982).
*954 “El deber de previsión no se extiende a todo peligro imaginable que concebiblemente pueda amenazar la seguridad... sino a aquél que es probable que suceda y que llevaría a una persona prudente a anticiparlo. ” Blas v. Hosp. Guadalupe, 146 D.P.R. 267, 324 (1998); Hernández v. Gobierno de la Capital, 81 D.P.R. 1031, 1038 (1960).
Cabe señalar que “[e]l deber de cuidado incluye tanto la obligación de anticipar como la de evitar la ocurrencia de daños cuya probabilidad es razonablemente previsible”. De otro lado, “[l]a culpa consiste en la omisión de la diligencia exigible, mediante cuyo empleo podría haberse evitado el resultado dañoso. La diligencia exigible es la que cabe esperar del ser humano medio, el buen paterfamilias. Si el daño es previsible por éste, hay responsabilidad. Si no es previsible, estamos generalmente en presencia de un caso fortuito. ”
Tormos Arroyo v. D.I.P., supra. (Citas Omitidas).
En nuestro ordenamiento jurídico, rige además la teoría de la causalidad adecuada. Conforme a ella “no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general’’. Sociedad de Gananciales v. Jerónimo Corp., 103 D.P.R. 127, 134 (1974). Esta norma ha sido fundamentalmente desarrollada con el propósito de limitar la responsabilidad civil a aquellos casos en que la ocurrencia de un hecho dañoso es imputable moralmente a su alegado autor, porque el daño es una consecuencia previsible o voluntaria del acto negligente. Soto Cabral v. E.L.A., 138 D.P.R. 298, 317 (1995). Así pues “un daño parece ser el resultado natural y probable de un acto negligente si después del suceso, y mirándolo retroactivamente el acto que se alega ser negligente, tal daño aparece como la consecuencia razonable y ordinaria del acto”. Toro v. E.L.A., 142 D.P.R. 464 (1997), citando Torres Trumbull v. Pesquera, 97 D.P.R. 338 (1969).
El principio general de responsabilidad civil extracontractual en el caso de actuaciones de empleados de establecimientos comerciales dispone que el dueño del establecimiento comercial responde civilmente si, mediando culpa o negligencia, alguno de sus empleados le causa daño a un tercero en el ejercicio de sus funciones. Artículos 1802 y 1803 del Código Civil de Puerto Rico, supra.
En las reclamaciones amparadas en la detención o registro ilegal, se ha exigido que la parte demandante no solamente demuestre los requisitos del Artículo 1802, antes citado, sino que también pruebe la existencia de una detención ilegal. Ayala v. San Juan Racing, supra.
La causa en daños por detención ilegal, es el acto de restringir a una persona contra su voluntad o libertad de acción personal. Supermercados Grande Inc. v. Alamo Pérez, Op. de 12 de septiembre de 2002; Ayala v. San Juan Racing, 112 D.P.R. 804 (1982).
El Tribunal Supremo de Puerto Rico en Parrilla Báez v. Airport Catering, 133 D.P.R.263 (1993), estableció que los elementos constitutivos de la causa de acción por detención ilegal son los siguientes: 1) la intención de producir la detención ilegal o certeza sustancial de que el acto ejecutado volitivamente producirá ésta; 2) el acto positivo o afirmativo en la dirección de producir ilegalmente la detención involuntaria del perjudicado; 3) que se produzca ilegalmente la detención o la confinación total; 4) que la detención sea involuntaria; 5) el pequdicado tiene que estar consciente de su detención, y 6) que exista relación causal, suficiente en derecho, entre el acto del demandado y la detención o confinación del demandante.
La detención ilegal “se considera una transgresión a la persona y va fundamentalmente dirigida a proteger a los individuos en el disfrute de su derecho de libertad, por lo que no se requiere que el perjudicado sea arrestado ni encarcelado; sólo la mera interferencia del demandado con la libertad total de movimiento del perjudicado puede dar paso a una causa de acción en daños y perjuicios por detención ilegal. ” Supermercados Grande Inc. v. Alamo Pérez, supra. Véase además, Dobbins v. Hato Rey Psychiatric Hospital, 87 D.P.R. 30 (1962); García *955 Calderón v. Galiñanes Hermanos, 83 D.P.R. 318 (1961). La duración de la detención sólo influirá en el alcance de los daños y perjuicios sufridos, por lo cual una detención momentánea, de ser ilegal, da derecho a una causa de acción. Tampoco es necesario el uso de la fuerza, ni que el detenido ofrezca resistencia violenta. ID.
Según señaló recientemente el Tribunal Supremo en Supermercados Grande Inc. v. Alamo Pérez, supra, “[s]e requiere pues, que el demandado tenga la intención de producir el acto que constituye la detención ilegal o que tenga la certeza sustancial de que dicho resultado será producido por sus actos, aunque no se los proponga o intente particularmente. De igual forma, puede haber una detención ilegal cuando se intenta detener a una persona y se detiene a otra. Aplicarían entonces las normas sobre intención transferida o Transfer of Intent”. Citas Omitidas.
La procedencia de una acción civil contra la persona particular que efectúa o causa la detención de un ciudadano que no ha cometido delito, ha de depender de criterios de razonabilidad. En Ayala v. San Juan Racing Corp, supra, el Tribunal Supremo expreso que:

“[e]n la búsqueda de un adecuado balance entre la obligación que toda persona tiene de cooperar en la lucha contra el crimen y el derecho que toda persona tiene a no ser privado ilegalmente de su libertad, el criterio de razonabilidad debe aplicarse a base de las circunstancias de cada caso.[...] [DJebe recurrirse a la figura del hombre prudente y razonable, el reasonable man de la jurisprudencia angloamericana, equivalente al buen padre de familia a que se refiere el Derecho civil. ”

Supermercados Grande v. Alamo, supra.

En cuanto a los daños, el Tribunal Supremo señaló en Rivera Rodríguez et al. v. Tiendas Pitusa, Op. de 28 de junio de 1999, 99 J.T.S. 107, que:
“La responsabilidad civil en daños y perjuicios es resarcir al damnificado, otorgándole un valor económico al daño sufrido. Consiste en atribuir al perjudicado dinero suficiente para compensar su interés perjudicado. Es una especie de subrogación real en que el dinero ocupa el lugar de los daños y perjuicios sufridos, y una atribución pecuniaria que crea una situación patrimonial equivalente a la destruida por el daño causado. García Pagán v. Shiley Caribbean, etc., 122 D.P.R. 193, 205, 206 (1988); Rodríguez Cancel v. A.E.E., 116 D.P.R. 442, 455-456 (1985); y Moa v. E.L.A., 100 D.P.R. 573 (1972).
El derecho a ser compensado no puede derrotarse meramente por el carácter especulativo que en alguna medida supone el cómputo de daños. Odriozola v. Cosmetic Dist. Corp., 116 D.P.R. 485 (1985). Claro está, al medirlos, el juzgador debe hacerlo a base de la prueba, procurando siempre que la indemnización no se convierta en una industria -Atile v. McClurg, 87 D.P.R. 865 (1963)- y se mantenga su sentido remediador, no punitivo. Vela de Valentín v. E.L.A., 84 D.P.R. 112 (1961). ”
C. La apreciación de la prueba
El alcance de la revisión judicial sobre cuestiones de hecho está regulado por lo dispuesto en la Regla 43.2 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. Ill R. 43.2, la cual en lo pertinente dispone:

“Regla 43.2. Declaración de derechos probados y conclusiones de derechos

En todo pleito, el tribunal especificará los hechos probados y separadamente consignará sus conclusiones de derecho y ordenará que se registre la sentencia que corresponda; y al conceder o denegar injunctions interlocutorios, el tribunal, de igual modo, consignará las determinaciones de hechos y conclusiones de derecho que constituyan los fundamentos de su resolución. Las determinaciones de hechos basadas en *956 testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos. Las determinaciones de hechos de un comisionado, en tanto en cuanto el tribunal las adopte, serán consideradas como determinaciones de hechos del tribunal. ” [Enfasis Suplido.].
Respecto a la revisabilidad de la prueba testifical, es norma establecida aquélla que nos impide intervenir con la apreciación de la prueba que hizo el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Colón González v. KMART, opinión de 26 de junio de 2001, 2001 J.T.S. 98, a la pág. 1484; Trinidad García v. Chade, opinión de 18 de enero de 2001, 2001 J.T.S. 10, a la pág. 794.
En reiteradas ocasiones, el Tribunal Supremo ha reconocido como norma fundamental de nuestro ordenamiento jurídico que los tribunales apelativos, en ausencia de error, pasión, prejuicio y parcialidad, no deben intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad realizadas por los tribunales de instancia. Argüello López v. Argüello García, opinión de 31 de agosto de 2001, 2001 J.T.S. 127; López Vicil v. ITT Intermedia Inc., 142 D.P.R. 857 (1997). (Enfasis nuestro).
También ha enfatizado que “un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. ” Argüello López v. Argüello García, supra; Rolón García y otros v. Charlie Car Rental, opinión de 2 de junio de 1999, 99 JTS 89.
Las determinaciones sobre la credibilidad que le dio a los testigos el tribunal sentenciador “es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. ” Argüello López v. Argüello García, supra; Pueblo v. Bonilla Romero, 120 D.P.R. 92 (1987).
Sin embargo, aunque el arbitrio del juzgador de hechos es respetable y merece deferencia, no es absoluto y “una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal”. Méndez v. Morales 142 D.P.R. 26 (1996); Rivera Méndez v. Cruz Corchado, 119 D.P.R. 8 (1987). Por ello, aunque haya evidencia que sostenga las conclusiones de hecho del tribunal de instancia, si de un análisis de la totalidad de la evidencia el tribunal revisor queda convencido que se cometió un error, como cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, las consideraremos claramente erróneas. Méndez v. Morales, supra; Abudo Servera v. A.T.P.R., 105 D.P.R. 728 (1977).
Expuesto el derecho aplicable a la controversia ante nos, procedemos a resolver.
III
En el caso de autos, la parte apelante, como parte de su descubrimiento de prueba, cursó a los aquí apelados Supermercado Amigo y Executive Security Inc., un requerimiento de admisiones. Dichas partes nunca contestaron los mismos, por lo que el Tribunal de Primera Instancia dio por admitidos los mismos a solicitud de la parte apelante sin ninguna objeción al respecto de las partes apeladas. Siendo así, quedaron por admitidos los hechos plasmados en el documento. En cuanto a los mismos quedó admitido por el apelado Supermercado Amigo, entre otras cosas lo siguiente:

“El 27 de enero de 2000, el menor Jesús Gregirene Hernández se encontraba visitando las facilidades del Supermercado Amigo localizada en Río Grande Estates, en compañía del menor Edgar Cirino.

El 27 de enero de 2000, Supermercado Amigo había otorgado un contrato de prestación de servicios de seguridad y vigilancia con la Compañía Executive Security Services, Inc.

*957
Para el 27 de enero dé 2000, el Sr. Juan Rodríguez, empleado de Executive Security, Inc., intervino con el menor Jesús M. Gregirene Hernández.

La intervención que realizó el Sr. Juan Rodríguez con el menor Jesús Gregirene Hernández fue en la parte de adentro del Supermercado Amigo.

Luego que el Sr. Juan Rodríguez interviniera con el menor Jesús M. Gregirene Hernández, el menor fue requerido para que sacara todas sus pertenencias del bolsillo.

El Sr. Juan Rodríguez le informó al menor Jesús Gregirene Hernández que sacara todas sus pertenencias del bolsillo, ya que tenía una sospecha que se había apropiado de mercancía de la demandada.

Con anterioridad a la intervención del menor Jesús Gregirene Hernández, intervino un empleado del Supermercado Amigo.

El menor Jesús M. Gregirene Hernández no se le encontró mercancía alguna el 27 de enero de 2000, al ser intervenido por el Sr. Juan Rodríguez. ”

En cuanto a Executive Security Services, Inc., se dieron por admitidos entre otros, los siguientes hechos:

“Para el 27 de enero de 2000, Executive Security Services, Inc. tenía un contrato de prestación de servicios de seguridad con el Supermercado Amigo, ubicado en la Urbanización Río Grande Estates, Municipio de Río Grande, Puerto Rico.

El 27 de enero de 2000, el Sr. Juan Rodríguez era empleado de Executive Security Services, Inc.

El Sr. Juan Rodríguez prestaba servicios de seguridad el día 27 de enero de 2000 en el Supermercado Amigo de Río Grande.

El Sr. Juan Rodríguez intervino con el menor Jesús Gregirene Hernández mientras éste se encontraba dentro del establecimiento comercial Supermercado Amigo, Inc., Río Grande, Puerto Rico.

El Sr. Juan Rodríguez no observó al menor Jesús Gregirene Hernández, mientras éste se encontraba observando los carritos “Hot Wheels” dentro del establecimiento comercial del Supermercado Amigo.

Un empleado del Supermercado Amigo, Inc., se comunicó con Juan Rodríguez para informar que Jesús Gregirene Hernández estaba examinando los carritos “Hot Wheels” dentro del Supermercado Amigo, Inc.

El empleado, al ver al menor Jesús M. Gregirene Hernández, no tenía motivo fundado para intervenir con dicho menor.

El Sr. Juan Rodríguez no tenía motivo fundado para llevar a cabo el registro del menor Jesús M. Gregirene Hernández.

El Sr. Juan Rodríguez no tenía motivo fundado para solicitar que el menor Jesús M. Gregirene Hernández sacara todas sus pertenencias de los bolsillos.

El Sr. Juan Rodríguez realizó un registro del menor Jesús Gregirene Hernández el día 27 de enero de 2000.

*958
El menor Jesús Gregirene Hernández no autorizó el registro de su persona por el Sr. Juan Rodríguez.

El Sr. Juan Rodríguez no encontró objeto, cosa o mercancía en posesión del menor Jesús Gregirene Hernández. ”

No obstante haber sido dados por admitidos los hechos señalados en los requerimientos de admisiones anteriormente enumerados y haberse por ello establecido los elementos de negligencia y de una causa de acción por detención ilegal, el Tribunal de Primera Instancia no tomó ello en consideración al momento de emitir la sentencia apelada.
Señaló el foro apelado que según la declaración del menor Jesús Gregirene Hernández, cuando estaba en una de las góndolas del supermercado se le acercó una persona que le pidió ver sus bolsillos, cosa que hizo voluntariamente sin mirar a la persona que se le había acercado. Añadió el tribunal que el empleado de seguridad declaró no haber intervenido con el menor aquí apelante, sino con otro y que dicho testimonio gozó de su entero crédito. Por lo tanto concluyó que la prueba ofrecida no puso al tribunal en condiciones de determinar que hubo privación de la libertad al menor apelante ni que éste sufriera daño.
Como se puede apreciar de la sentencia del foro de instancia, el tribunal de instancia, al evaluar el caso, lo hizo contrario a las admisiones de las apeladas, las cuales estaba obligado a tomar como ciertas de acuerdo a la Regla 33 de Procedimiento Criminal, supra. Por ello solamente le restaba establecer los daños ocurridos al menor. En el caso de autos, era innecesaria la determinación que hizo el tribunal de instancia sobre negligencia, toda vez que la misma surge de las admisiones hechas por las partes apeladas.
Según la jurisprudencia anteriormente señalada, una causa de acción por detención ilegal puede darse sólo con la mera interferencia del demandado con la libertad total de movimiento del pequdicado y no es necesario que la misma sea de una duración específica o que medie fuerza al realizarse la misma. La duración y circunstancias de la detención sólo influirá en la determinación de los daños sufridos por la parte perjudicada.
En cuanto a la adjudicación de los daños, concluimos que la parte apelante demostró los mismos mediante el testimonio del psiquiatra Dr. Femando Cabrera, quien atendió al menor y le diagnosticó ansiedad y no descartó la posibilidad de que éste padezca de un desorden de ajuste con síntomas de ansiedad y depresión, lo que le ha causado una disñmción académica, corroborable con el expediente académico del menor anterior y posterior al evento.
Por lo tanto, concluimos que dado el hecho de que las partes apeladas fueron negligentes, probado por sus propias admisiones, y que de la prueba desfilada se puede colegir la existencia de un daño, le corresponde al Tribunal de Primera Instancia realizar una vista para evaluar la magnitud de los mismos y establecer la cuantía a otorgar de acuerdo a los mismos.
IV
Por los fundamentos anteriormente expuestos, revocamos la sentencia apelada que desestimó la demanda y devolvemos el caso al Tribunal de Primera Instancia para que celebre vista de daños.
Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.
Aida Heana Oquendo Graulau Secretaria General